UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| TIFFANI FINCH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>AARP,<br><br>        Defendant. | Case No.  4:26-cv-00208-SMR-SBJ<br><br><br>**DEFENDANT AARP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ACTION ALLEGATIONS** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

LEGAL STANDARDS ...................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM. ............................................................................. 5

    A.  AARP is a Nonprofit; Its Texts Are Exempt from the FCC's DNC Requirements. ........................................................................................... 6

    B.  Even if AARP Were Not Exempt, Plaintiff Consented to Receive AARP's Text Messages and Did Not Clearly Express Her Desire to Opt Out of All Messages. ........................................................................................... 8

        i.    Plaintiff Gave "Prior Express Invitation or Permission" to Receive AARP's Text Messages. ................................................................. 8

        ii.   Plaintiff's Opt Out Was Limited to One Short Code and Did Not Reasonably Extend to All AARP Text Messages. ....................... 10

    C.  Congress Did Not Create a Private Cause of Action for Text Messages. ............. 12

    D.  The Text Messages Plaintiff Allegedly Received Are Not Actionable Because They Do Not Encourage the Purchase of Goods or Services from AARP. ........... 14

    E.  Count III Should Be Dismissed Because Plaintiff Fails to Allege Facts Showing a Willful and Knowing Violation of the TCPA. .................................... 16

    F.  Plaintiff Lacks Standing to Seek Injunctive Relief. .............................................. 17

II.   PLAINTIFF'S PROPOSED CLASSES SHOULD BE STRICKEN BECAUSE THEY ARE FAIL SAFE CLASSES AND ARE OVERBROAD. .................................. 18

    A.  The Court Should Strike Plaintiff's Improper Fail-Safe Classes. ......................... 18

    B.  Plaintiff's National Internal Do Not Call Class Is Impermissibly Overbroad. ..... 19

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
    No. 16 C 2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ......................................................20

*Adam v. CHW Grp., Inc.*,
    No. 21-CV-19, 2021 WL 7285905 (N.D. Iowa Sept. 9, 2021)...........................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................4, 9

*Bank v. CreditGuard of Am.*,
    No. 18-CV-1311, 2019 WL 1316966 (E.D.N.Y. Mar. 22, 2019)...............................................7

*Beard v. John Hiester Chevrolet, LLC*,
    640 F. Supp. 3d 420 (E.D.N.C. 2022)......................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................................4

*Bennett v. Veterans Aid PAC, Inc.*,
    No. 4:21-CV-340, 2022 WL 1632553 (E.D. Tex. May 23, 2022) .............................................7

*Bryant v. King's Creek Plantation, LLC*,
    No. 4:20-cv-00061, 2020 WL 6876292 (E.D. Va. June 22, 2020)...................................18, 19

*Christopherson v. Bushner*,
    33 F.4th 495 (8th Cir. 2022) ......................................................................................................4

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983).....................................................................................................................17

*Dillon v. Wingstop Rests. Inc.*, No. SACV17-02123, 2018 WL 11473929 (C.D.
    Cal. Mar. 15, 2018) .....................................................................................................................9

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021) ....................................................................................................5

*Enervations, Inc. v. Minn. Min. & Mfg. Co.*,
    380 F.3d 1066 (8th Cir. 2004) ....................................................................................................4

*Epps v. Earth Fare, Inc.*,
    No. 16-8221, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017) ...................................................12

*Esquivel–Quintana v. Sessions*,
    581 U.S. 385 (2017)........................................................................................................13

*Golan v. Veritas Ent., LLC*,
    788 F.3d 814 (8th Cir. 2015) ...........................................................................................5

*Harmon v. City of Kan. City*,
    197 F.3d 321 (8th Cir. 1999) .........................................................................................17

*Harris v. Medtronic Inc.*,
    729 F. Supp. 3d 869 (D. Minn. 2024).............................................................................20

*Hicks v. Hou. Baptist Univ.*,
    No. 5:17-CV-629-FL, 2019 WL 96219 (E.D.N.C. Jan. 3, 2019) .....................................8

*Horton v. Tarrant Cnty. Hosp. Dist.*,
    No. 4:22-CV-9-P, 2022 WL 702536 (N.D. Tex. Feb. 4, 2022).......................................15

*Hulce v. Zipongo, Inc.*,
    723 F. Supp. 3d 669 (E.D. Wis. 2024), *aff'd*, 132 F.4th 493 (7th Cir. 2025)............14, 16

*Jacksen v. Chapman Scottsdale Autoplex, LLC*,
    No. CV-21-00087, 2023 WL 142533 (D. Ariz. Jan. 10, 2023) ......................................19

*Johannessohn v. Polaris Indus. Inc.*,
    9 F.4th 981 (8th Cir. 2021) ............................................................................................19

*Jones v. Blackstone Med. Servs., LLC*,
    792 F. Supp. 3d 894 (C.D. Ill. 2025) .............................................................................13

*Webb ex rel. K. S. v. Smith*,
    936 F.3d 808 (8th Cir. 2019) .........................................................................................17

*Koeller v. Cyflare Sec., Inc.*,
    No. 4:25-cv-410, 2025 WL 3280316 (E.D. Mo. Nov. 25, 2025) ...................................18

*Koeller v. Seemplicity Security Inc.*,
    No. 4:24-cv-00528, 2024 WL 4751306 (E.D. Mo. Nov. 12, 2024) .............................16, 17

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
    No. 4:12–CV–221, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013).................................18, 19

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).......................................................................................................13

*Maldonado v. HSBC Mortg. Sys., Inc.*,
    No. 2:16–cv–00784, 2017 WL 3496460 (D. Nev. Aug. 15, 2017) ................................20

iv

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)............................................................................................................12

*Michel v. Credit Prot. Ass'n L.P.*,
No. 14-cv-08452, 2017 WL 3620809 (N.D. Ill. Aug. 23, 2017) .............................................11

*Miller v. Redwood Toxicology Lab, Inc.*,
688 F.3d 928 (8th Cir. 2012) ................................................................................................5

*Nielsen v. Preap*,
586 U.S. 392 (2019)............................................................................................................13

*Pietzak v. Microsoft Corp.*,
No. CV 15–5527, 2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ......................................8, 10

*Pulsifer v. United States*,
601 U.S. 124 (2024)......................................................................................................13, 14

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 1:25-CV-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .........................................13

*Rando v. Edible Arrangements Int'l, LLC*,
No. 17–701, 2018 WL 1523858 (D.N.J. Mar. 28, 2018).......................................................12

*Reese v. Anthem, Inc.*,
No. 17-07940, 2018 WL 1251658 (E.D. La. Mar. 12, 2018) ................................................15

*Saladino v. Mad City Home Improvement, LLC*,
No. 24-CV-1419, 2025 WL 4663390 (D. Minn. Feb. 18, 2025)......................................6, 20

*Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-cv-00846, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025).......................................14

*Shirley Med. Clinic, P.C. v. United States*,
446 F. Supp. 2d 1028 (S.D. Iowa 2006), *aff'd*, 243 F. App'x 191 (8th Cir.
2007) .................................................................................................................................7

*Stamper v. Manus-Northwestern Oral Health Center, Ltd.*,
No. 23 C 05660, 2025 WL 2044093 (N.D. Ill. 2025)...........................................................11

*Stockdale v. Skymount Prop. Grp., LLC*,
No. 1:25 CV 1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026)..........................................13

*Suriano v. French Riviera Health Spa, Inc.*,
No: 18-9141, 2018 WL 6702749 (E.D. La. Dec. 20, 2018) ............................................15, 16

*Thompson v. Replacements, Ltd.*,
No. 4:23CV246, 2024 WL 1253836 (E.D. Mo. Mar. 25, 2024)....................................8, 9, 10

*Thompson v. Vintage Stock, Inc.*,
No. 4:23-cv-00042, 2025 WL 385681 (E.D. Mo. Feb. 3, 2025) ........................................8, 10

*Union Pac. R.R. Co. v. United States*,
865 F.3d 1045 (8th Cir. 2017) ...................................................................................13, 14

*United States v. Moreira-Bravo*,
56 F.4th 568 (8th Cir. 2022) ............................................................................................13

*Viggiano v. Kohl's Dep't Stores, Inc.*,
No. 17-cv-0243, 2017 WL 5668000 (D.N.J. Nov. 27, 2017) ....................................................12

*Vogt v. State Farm Life Ins. Co.*,
963 F.3d 753 (8th Cir. 2020) .........................................................................................18

*Vukadinovich v. Posner*,
No. 2:22-CV-118, 2023 WL 4931648 (N.D. Ind. June 21, 2023) ...........................................7

*WDC Acquisition LLC v. Arkema Inc.*,
No. 4:23-cv-00481, 2025 WL 4670601 (S.D. Iowa Oct. 22, 2025) .........................................4

*Winters v. Loan Depot LLC*,
No. CV-20-01290, 2022 WL 22865378 (D. Ariz. Mar. 17, 2022)....................................18, 19

*Woodburn v. Gen. Auto. Ins. Servs.*,
No.: 2:22-cv-01975, 2023 WL 11892501 (D. Nev. Nov. 6, 2023).........................................17

*Zean v. Fairview Health Servs.*,
149 F. Supp. 3d 1129 (D. Minn. 2016), *aff'd*, 858 F.3d 520 (8th Cir. 2017) ...........................8

*Zean v. Fairview Health Servs.*,
858 F.3d 520 (8th Cir. 2017) ........................................................................................4, 9

**Statutes**

47 U.S.C. § 227(a) .................................................................................................6, 8, 14

47 U.S.C. § 227(c) ................................................................................................. *passim*

47 U.S.C. § 227(e) .................................................................................................14

**Regulations**

47 C.F.R. § 64.1200(a)...............................................................................................7, 10

47 C.F.R. § 64.1200(c)............................................................................................. *passim*

47 C.F.R. § 64.1200(d) ............................................................................................. *passim*

47 C.F.R. § 64.1200(e)..................................................................................................6

47 C.F.R. § 64.1200(f)..............................................................................................6, 14

**Other Authorities**

Fed. R. Civ. P. 12.................................................................................................4, 5, 18

*Finch v. Amare Global, LP*,
    No. 8:23-cv-01637 (Sept. 1, 2023), ECF No. 1, *dismissed* (C.D. Cal. Nov. 13,
    2023) ..............................................................................................................................1

*Limits on Exempted Calls Under the Tel. Consumer Prot. Act of 1991*,
    86 FR 11443-01, 2021 WL 720188 (Feb. 25, 2021) ...................................................7

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
    of 1991*, 7 FCC Rcd. 8752 (1992)..............................................................................8

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
    of 1991*, 18 FCC Rcd. 1014, FCC 03–153 (2003) ............................................6, 7, 12

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
    of 1991*, 30 FCC Rcd. 7961 (2015)............................................................................10

Wright & Miller, *Fed. Prac. & Pro.* § 1383 (3d ed.)....................................................5

Wright & Miller, *Fed. Prac. & Pro.* § 1760 (4th ed.) .................................................19

**INTRODUCTION**

Plaintiff Tiffani Finch ("Plaintiff") has brought a boilerplate class action complaint alleging that a handful of text messages she received from Defendant AARP violated the Telephone Consumer Protection Act ("TCPA").[1] Her claims are foreclosed by the plain terms of the TCPA. The complaint also fails to allege sufficient facts to support a TCPA claim. Additionally, the complaint attempts to plead around two independently fatal facts; namely, that AARP is a nonprofit corporation (covered by a TCPA exemption) and that Plaintiff opted in to receive AARP's text messages when she purchased an AARP membership. As explained more fully below, the Court should dismiss the complaint for the following reasons:

*First*, AARP is a tax-exempt nonprofit corporation. This precludes Plaintiff's claims because the TCPA expressly exempts nonprofits from compliance with the regulations at issue.

*Second*, Plaintiff provided "prior express invitation or permission" to receive text messages from each of the three AARP short codes referenced in the complaint. Plaintiff successfully opted out of one of the short codes, but she never opted out of the other two short codes. Nor did she clearly express her desire to opt out of all text messages from AARP. She does not allege she received subsequent text messages from the short code from which she opted out.

*Third*, under the plain terms of the TCPA, text messages are not actionable. The TCPA creates a private cause of action for any "telephone call" made in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5). As numerous courts have concluded, a "text message" is not a "telephone call" within the plain and ordinary meaning of the statutory terms.

*Fourth*, the text messages at issue are not actionable because none of them encouraged the

---

[1] This is not the first time Plaintiff has filed a TCPA action. *See Finch v. Amare Global, LP*, No. 8:23-cv-01637 (Sept. 1, 2023), ECF No. 1, *dismissed* (C.D. Cal. Nov. 13, 2023).

purchase of goods or services from AARP.  Rather, the messages were informational.

*Fifth*, Count III should be dismissed because Plaintiff fails to allege facts plausibly suggesting AARP willfully and knowingly violated the TCPA.

*Sixth*, Plaintiff lacks standing to obtain injunctive relief because she does not allege a continuing harm; her request is premised only on alleged past harm.

Finally, if Plaintiff's complaint were to survive dismissal, the Court should, at a minimum, strike the proposed class allegations for being improper "fail safe" classes and being impermissibly overbroad.

## FACTUAL BACKGROUND

On June 28, 2024, Plaintiff expressly opted in to receive text messages from three separate AARP short codes—50757, 73478, and 22777—when she purchased a one-year AARP membership.  Declaration of Lawrence Montoya ("Montoya Decl.") ¶¶ 5–6 & Ex. A.  On the same day, Plaintiff's phone number ending in -0962 (the "Phone Number") expressly confirmed the opt ins by sending confirmatory text messages to all three AARP short codes.  *Id.* ¶ 5 & Ex. A.

Now, two years later, Plaintiff alleges she began receiving unsolicited text messages from these short codes supposedly out of the blue starting on January 9, 2026.  Compl. ¶ 13.  On January 19, 2026, Plaintiff texted the word "Stop" only to the 73478 short code.  *Id.* ¶¶ 14–15.  She received a confirmation from the 73478 short code stating: "AARP Alerts: You have been unsubscribed and will no longer receive messages from AARP Alerts."  *Id.* ¶¶ 15–16.  She does not allege she received subsequent text messages from the 73478 short code.  Plaintiff also does not allege she ever texted "Stop" to the other two short codes.  Consequently, between January and March 2026, Plaintiff allegedly received several text messages from the 50757 and 22777 short codes.  *Id.* ¶ 17.

The additional text messages from the 50757 and 22777 short codes allegedly caused Plaintiff "harm" because she had to take "fifteen to thirty seconds" to "look down at [her] phone

to review [AARP's] message[s]" and because she had to spend "approximately fifteen minutes" to retain counsel to stop AARP's text messages. *Id.* ¶¶ 45–47. Again, Plaintiff does not allege she ever replied "Stop" to the 50757 or 22777 short codes.

Based only on the above allegations, Plaintiff alleges AARP does not maintain a do-not-call ("DNC") list, does not have a written policy for maintaining such a list, and does not have a procedure for handling opt out requests pursuant to the FCC's implementing regulations under the TCPA, 47 C.F.R. § 64.1200(d) (hereinafter "FCC Subsection (d)"). *See id.* ¶¶ 18, 21–27, 32–33. Plaintiff further alleges she registered the Phone Number in April 2023 on the national do-not-call registry referenced in 47 C.F.R. § 64.1200(c) (hereinafter "FCC Subsection (c)"). *Id.* ¶ 41.

Plaintiff purports to bring claims on behalf of two proposed classes. First is the "Do Not Call Registry Class" which includes persons who have received a text message from AARP, whose name is on the national DNC registry, and "for whom [AARP] claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff." *Id.* ¶ 49. Second is the "National Internal Do Not Call Class" which includes those who received an AARP text message "while [AARP] did not maintain the required procedures under [FCC Subsection (d)] for maintaining a list of persons who request not to receive such calls." *Id.*

Count I asserts a claim under 47 U.S.C. 227(c) on behalf of the Do Not Call Registry Class premised on violations of FCC Subsection (c). Count II asserts a claim under 47 U.S.C. § 227(c) on behalf of the National Internal Do Not Call Class premised on violation of FCC Subsection (d). Count III alleges knowing and/or willful violations of FCC Subsections (c) and (d).

As indicated above, Plaintiff omits two critical facts from the complaint. First, she omits the fact that AARP is a tax-exempt nonprofit corporation. Declaration of Kelsy Bennett ("Bennett

3

Decl.") ¶¶ 3–5 & Exs. A-C. AARP's status is a matter of public record. *Id.* Second, as noted above, Plaintiff fails to mention that she purchased a one-year AARP membership on June 28, 2024. Montoya Decl. ¶ 6. When doing so, she opted in to receive text messages from each of the AARP short codes. *Id*. ¶ 5 & Ex. A. As reflected in Exhibit A attached to the accompanying Montoya Declaration, the user of the Phone Number expressly confirmed their consent to receive text messages by responding "Yes" to confirmatory text messages from each of the three AARP short codes. *Id*. Each confirmation text made plain that the user was opting in to a particular type of communication associated with a particular short code and the user could reply "Stop" to that short code to opt out of messages concerning that type of communication. *See id*.

## <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where a plaintiff fails to state a claim upon which relief can be granted. To that end, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept "naked assertions devoid of further factual enhancement." *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). Moreover, a plaintiff fails to state a claim if it "predicates entitlement to relief on factual pleadings that merely state 'labels and conclusions.'" *WDC Acquisition LLC v. Arkema Inc.*, No. 4:23-cv-00481, 2025 WL 4670601, at *2 (S.D. Iowa Oct. 22, 2025) (quoting *Twombly*, 550 U.S. at 555).

"Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). More specifically, the court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record[.]" *Zean v.*

4

*Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

Rule 12(f) permits courts to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This includes class action allegations prior to the filing of a motion for class certification. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). Courts have liberal discretion to strike class action allegations where "it is 'apparent from the pleadings that the class cannot be certified' because . . . 'permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained.'" *Id.* at 1091–92 (quoting 5C Wright & Miller, *Fed. Prac. & Pro.* § 1383 (3d ed.)).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

"Congress enacted the TCPA to protect consumers from the proliferation of intrusive telemarketing calls to their homes." *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (internal quotation omitted). To that end, the TCPA granted the FCC the authority to promulgate regulations protecting consumers from unwanted calls. 47 U.S.C. § 227(c)(1) and (2). Relevant here, the regulations promulgated by the FCC include Subsections (c) and (d) of 47 C.F.R. § 64.1200.

FCC Subsection (c) prohibits entities from initiating "telephone solicitations" to "residential telephone subscribers" whose numbers are registered on the national DNC registry. 47 C.F.R. § 64.1200(c)(2). FCC Subsection (d) prohibits entities from initiating automated, prerecorded, or telemarketing calls without meeting certain procedural standards for maintaining an internal DNC list, including: (1) maintaining a written DNC policy; (2) training employees on

5

how to use an internal DNC list; and (3) recording and honoring a consumer's DNC request within a reasonable time. *Saladino v. Mad City Home Improvement, LLC*, No. 24-CV-1419, 2025 WL 4663390, at \*2 (D. Minn. Feb. 18, 2025) (citing 47 C.F.R. § 64.1200(d)(1)–(3)). The TCPA provides a private right of action enabling consumers to sue for telephone calls made in violation of the FCC regulations. 47 U.S.C. § 227(c)(5).

For the reasons below, Plaintiff has failed to state a claim under FCC Subsection (c) or Subsection (d).

### A.  AARP is a Nonprofit; Its Texts Are Exempt from the FCC's DNC Requirements.

Tax-exempt nonprofit organizations are generally exempt from the DNC requirements of the TCPA. Both the TCPA and the FCC regulations explicitly exclude a call or message by a "tax exempt nonprofit organization" from the definition of "telephone solicitation."  47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation" as not including messages "[b]y or on behalf of a tax-exempt nonprofit organization"). Consequently, the ban in FCC Subsection (c) on "telephone solicitations" to anyone who has registered his or her phone number on the national DNC registry does not apply to messages from tax-exempt nonprofit organizations. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

In addition, nonprofits are generally exempt from the internal DNC requirements of FCC Subsection (d). The FCC's regulations specify:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." [hereinafter, the "2003 Order"]

47 C.F.R. § 64.1200(e).

In the 2003 Order, the FCC expressly "declin[ed] to extend the national do-not-call

requirements to tax-exempt nonprofit organizations." 2003 Order ¶¶ 37, 45. Even more, the FCC

"decline[d] to extend the company-specific requirements[2] to entities that solicit on behalf of tax-

exempt nonprofit organizations." *Id.* ¶ 95. In doing so, the FCC noted that some tax-exempt

nonprofit organizations voluntarily honor do-not-call requests and other organizations may find it

advantageous to follow this example. *Id.* ¶ 95. Taken as a whole, the 2003 Order demonstrates

the FCC regulations broadly exempt nonprofits from compliance with the DNC requirements,

including the requirements to maintain an internal DNC list and a DNC policy under FCC

Subsection (d). *See id.*[3]

Here, AARP is a 501(c)(4) tax-exempt nonprofit corporation incorporated under the laws

of Washington, D.C. *See* Bennett Decl. ¶¶ 3–5 & Exs. A–C.[4] Therefore, AARP is exempt from

compliance with the provisions of the TCPA regulating "telephone solicitations" and the relevant

DNC provisions in FCC Subsections (c) and (d) of the regulations. Because AARP is exempt,

Plaintiff's TCPA claims alleging violations of FCC Subsections (c) and (d) must be dismissed.

*See, e.g.*, *Bennett v. Veterans Aid PAC, Inc.*, No. 4:21-CV-340, 2022 WL 1632553, at *5–6 (E.D.

Tex. May 23, 2022) (dismissing TCPA as a matter of law where defendant was a nonprofit); *Bank*

*v. CreditGuard of Am.*, No. 18-CV-1311, 2019 WL 1316966, at *6 (E.D.N.Y. Mar. 22, 2019)

---

[2] The FCC Guidance uses the term "company-specific requirements" to refer to the FCC's internal DNC requirements in FCC Subsection (d). *See id.* ¶ 86.

[3] In 2021, the FCC amended FCC Subsection (d) to apply to entities making "any artificial or prerecorded-voice telephone calls pursuant to an exemption" including nonprofit organizations. *See* 47 C.F.R. § 64.1200(a)(3)(iv), (d); *see also Limits on Exempted Calls Under the Tel. Consumer Prot. Act of 1991*, 86 FR 11443-01, 2021 WL 720188 (Feb. 25, 2021). However, there is no allegation here that AARP made any "artificial or prerecorded-voice" telephone calls, so the amendment to FCC Subsection (d) has no application to Plaintiff's claims.

[4] The Court may take judicial notice of documents filed with a Secretary of State because they are public records. *Shirley Med. Clinic, P.C. v. United States*, 446 F. Supp. 2d 1028, 1035 (S.D. Iowa 2006), *aff'd*, 243 F. App'x 191 (8th Cir. 2007). The Court also may take judicial notice of publicly available documents filed with the Internal Revenue Service. *See Vukadinovich v. Posner*, No. 2:22-CV-118, 2023 WL 4931648, at *2 n.4 (N.D. Ind. June 21, 2023).

(telemarketing calls from 501(c)(3) nonprofit exempt); *Hicks v. Hou. Baptist Univ.*, No. 5:17-CV-629-FL, 2019 WL 96219, at *6 (E.D.N.C. Jan. 3, 2019) (dismissing TCPA claim against nonprofit after plaintiff agreed defendant was not subject to the statute).

**B. Even if AARP Were Not Exempt, Plaintiff Consented to Receive AARP's Text Messages and Did Not Clearly Express Her Desire to Opt Out of All Messages.**

i.  <u>Plaintiff Gave "Prior Express Invitation or Permission" to Receive AARP's Text Messages.</u>

Messages sent to a person with their "prior express invitation or permission" are not actionable under the TCPA.  47 U.S.C. § 227(a)(4)(A); 47 C.F.R. § 64.1200(c)(2)(ii), (f)(15).  In a 1992 rulemaking action implementing the TCPA, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  *In the Matter of Rules & Regul. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 ¶ 31 (1992).  "Many federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the [TCPA]."  *Pietzak v. Microsoft Corp.*, No. CV 15–5527, 2015 WL 7888408, at *1 (C.D. Cal. Nov. 17, 2015); *see Zean v. Fairview Health Servs.*, 149 F. Supp. 3d 1129, 1134–35 (D. Minn. 2016) (dismissing TCPA claim where plaintiff "consented to receiving cellular phone calls"), *aff'd*, 858 F.3d 520 (8th Cir. 2017); *Thompson v. Vintage Stock, Inc.*, No. 4:23-cv-00042, 2025 WL 385681, at *5 (E.D. Mo. Feb. 3, 2025) (plaintiff gave "prior express invitation" by entering her phone number in the defendant's system); *Thompson v. Replacements, Ltd.*, No. 4:23CV246, 2024 WL 1253836, at *3 (E.D. Mo. Mar. 25, 2024) ("By providing his cell phone number and agreeing to receive text messages . . . Plaintiff gave his prior written consent to receive text messages.").

In practice, "prior express invitation or permission" can be evidenced by texting "yes" or

"confirm" to a business's invitation to receive text messages. *See, e.g.*, *Dillon v. Wingstop Rests. Inc.*, No.: SACV 17-02123, 2018 WL 11473929, at *3 (C.D. Cal. Mar. 15, 2018) (finding plaintiff's express consent "clear and unmistakable" where he texted "Confirm" in response to defendant's invitation).

Here, Plaintiff gave AARP "prior express invitation or permission" to initiate text messages. When Plaintiff purchased an AARP membership on June 28, 2024, the Phone Number was opted in to receive text messages from each of the three AARP short codes—50757, 22777, and 73478.[5] Montoya Decl. ¶¶ 5–6. As reflected in Exhibit A of the Montoya Declaration, the user of the Phone Number expressly confirmed their consent to receive messages from each AARP short code by responding "Yes" to confirmatory text messages from each of the three short codes. *Id.* at Ex. A. Each confirmation text made plain that the Phone Number was opting in to a particular type of communication associated with a particular short code. *Id.* By opting in to receive AARP's text messages and responding "Yes" to each AARP short code confirmatory message, Plaintiff

---

[5] As indicated above, when deciding a motion to dismiss, courts may consider "documents necessarily embraced by the complaint" including "matters incorporated by reference or integral to the claim." *Zean*, 858 F.3d at 526. Here, Plaintiff alleges she never provided AARP with written consent nor "clearly and conspicuously" authorized AARP to contact her by text message. Compl. ¶¶ 36–37. Yet Plaintiff also alleges that, to the extent AARP had her consent, she revoked that consent when she texted "Stop" to short code 73478 on January 19, 2026. *Id.* ¶ 38. Further, Plaintiff seeks to represent a class of persons "for whom [AARP] claims . . . it obtained prior express written consent in the same manner as [AARP] claims it supposedly obtained prior written consent to call the Plaintiff." *Id.* ¶ 49. Under similar circumstances in *Zean*, the Eighth Circuit affirmed the lower court's consideration of documents that contradicted the plaintiff's "conclusory" allegation that she did not consent to the defendant's calls. 858 F.3d at 526–27; *see also Replacements*, 2024 WL 1253836, at *2–3 (considering consent notice embraced by pleadings). Like in *Zean* and *Replacements*, where the plaintiffs denied they consented to receiving calls or messages, Plaintiff here alleges both that she never consented to receiving text messages and that she did. Compl. ¶¶ 36–38, 49. "Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Zean*, 858 F.3d at 527 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court may consider the consenting text messages from Plaintiff that are embraced by the allegations of the complaint.

gave AARP her "prior express invitation or permission" to receive messages from each short code. *See Vintage Stock*, 2025 WL 385681, at *5; *Replacements*, 2024 WL 1253836, at *3; *Dillon*, 2018 WL 11473929, at *3; *Pietzak*, 2015 WL 7888408, at *1.

    ii.    <u>Plaintiff's Opt Out Was Limited to One Short Code and Did Not Reasonably Extend to All AARP Text Messages.</u>

Plaintiff alleges that on January 19, 2026, by texting "Stop" to AARP's 73478 short code, she made a clear and unambiguous request that AARP cease all further text message communications. Compl. ¶¶ 14–15. Plaintiff's single one-word text message does not support her conclusory allegation. She never expressed a desire to cease "all" messages from AARP and she never replied "Stop" to the other two AARP short codes as instructed. It was not reasonable for Plaintiff to assume that replying "Stop" to one short code applied to all short codes, particularly because she affirmatively and separately opted in to each of the three short codes. Montoya Decl. ¶ 5 & Ex. A. Indeed, the return confirmation text from short code 73478 made clear that AARP considered Plaintiff to have unsubscribed from the particular type of AARP messages associated with short code 73478 (AARP Alerts). Compl. ¶ 16. Nowhere in the complaint does Plaintiff allege that she then received additional messages from that short code (because she did not receive any such message); rather her claims focus on subsequent messages from other short codes to which she had not sent any request for opt out.

The TCPA's implementing regulations provide that "[a] called party may revoke prior express consent, including prior express written consent, to receive calls or text messages . . . by using any *reasonable method to clearly express* a desire not to receive further calls or text messages from the caller or sender." 47 C.F.R. § 64.1200(a)(10) (emphasis added). "When assessing whether any particular means of revocation used by a consumer was reasonable," the FCC "look[s] to the totality of the facts and circumstances surrounding that specific situation . . . ." *In the Matter*

*of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7998–99, ¶ 64 n.233 (July 10, 2015).

The court's decision in *Stamper v. Manus-Northwestern Oral Health Center, Ltd.*, No. 23 C 05660, 2025 WL 2044093 (N.D. Ill. 2025) is instructive on this point. There, the plaintiff opted out of receiving marketing text messages from her dental office, but she did not separately revoke consent to receiving text messages concerning upcoming appointments. *Id*. at \*1–2. The court found the dental office's subsequent text messages concerning upcoming appointments did not violate the TCPA, reasoning that "[b]y replying 'STOP,' [the plaintiff] clearly communicated a desire to unsubscribe from the specific type of message that she had just received, on behalf of the client to whom that message had been directed. She did not, however, clearly communicate a desire to unsubscribe to any and all text messages from [the defendant]." *Id.* at \*3. In other words, "she never clearly relayed a broader desire to unsubscribe across the board." *Id.* at \*4. By texting "Stop" to one category of text messages, the court concluded "the plaintiff's sole chosen means of revocation was not a 'reasonable' and 'clear expression' of a desire to fully unsubscribe." *Id.* (cleaned up); *see also Beard v. John Hiester Chevrolet, LLC*, 640 F. Supp. 3d 420, 431 (E.D.N.C. 2022) (dismissing TCPA claim where defendant "acted consistently with [the plaintiff's] prior written consent" where she revoked her consent as to one number but not another); *Michel v. Credit Prot. Ass'n L.P.*, No. 14-cv-08452, 2017 WL 3620809, at \*4 (N.D. Ill. Aug. 23, 2017) (plaintiff's revocation of consent to a debt-collection agency's calls only applied to communications concerning a specific creditor account, not communications involving other accounts).

The court's reasoning in *Stamper* applies here. Plaintiff only expressed her desire to opt out of text messages relating to short code 73478 (AARP Alerts). Compl. ¶¶ 14–15. She did not express an intent to opt out broadly of all AARP-related communications or to opt out specifically

of short code 50757 or 22777.  Given her awareness that she had been required initially to opt in to each of the three separate short codes, Plaintiff could have easily done so by texting "Stop" to each short code.  Indeed, that was what she was instructed to do.  *See* Montoya Decl. at Ex. A. That Plaintiff ignored those instructions undermines the validity of her TCPA claims.  *See Rando v. Edible Arrangements Int'l, LLC*, No. 17–701, 2018 WL 1523858, at *7–8 (D.N.J. Mar. 28, 2018) (finding no TCPA claim where plaintiff failed "to follow the apparently clear and apparently non-burdensome optout instructions" by texting "STOP"); *Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-cv-0243, 2017 WL 5668000, at *4 (D.N.J. Nov. 27, 2017) (dismissing TCPA claim where plaintiff did not follow instructions to unsubscribe from marketing messages); *Epps v. Earth Fare, Inc.*, No. 16-8221, 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017) (because "Plaintiff ignored Defendant's clear instruction to stop the messages" her revocation method was unreasonable).

In all, not only did Plaintiff give prior express invitation or permission to receive text messages from all three AARP short codes, but her one opt-out text to one short code was not a reasonable method to clearly express her desire not to receive any and all AARP text messages and unsubscribe across the board.

## C. Congress Did Not Create a Private Cause of Action for Text Messages.

The TCPA allows an individual to bring suit when he or she "has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."  47 U.S.C. § 227(c)(5) (emphasis added).  Under its plain and ordinary meaning, a "telephone call" does not include a text message.[6]

_____

[6] Although the FCC previously interpreted "telephone calls" to include text messages, *see* 2003 Order ¶ 165, the U.S. Supreme Court recently held that courts are "not bound by the FCC's interpretation of the TCPA.  [They] should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."  *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025).  Given the Supreme Court's recent precedent, as discussed in this section, several federal

12

When interpreting a statute, a court must begin with the text and apply the "normal tools" of statutory construction. *Esquivel–Quintana v. Sessions*, 581 U.S. 385, 391 (2017). In doing so, a court must give statutory terms "the meaning that proper grammar and usage would assign them." *United States v. Moreira-Bravo*, 56 F.4th 568, 571 (8th Cir. 2022) (quoting *Nielsen v. Preap*, 586 U.S. 392, 408 (2019)). "In a given statute, the same term usually has the same meaning and different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024); *accord Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1049 (8th Cir. 2017) ("[D]ifferences in statutory language convey differences in meaning."). "[E]very statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

When Congress enacted the TCPA in 1990, the term "telephone call" did not include text messages. Webster's Dictionary defined "call" as "the act of calling on the telephone" and "telephone" as "an instrument for reproducing sounds at a distance . . . one in which sound is converted into electrical impulses for transmission by wire." *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990)). "Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." *Id.*; *see also Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811, 2026 WL 456919, at *3–4 (N.D. Ga. Feb. 17, 2026) ("The statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899–901 (C.D. Ill. 2025) ("[B]ased on a plain reading of

---

courts have held that the term "telephone call" as used in Section 227(c)(5) of the TCPA does not encompass "text messages."

the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages."); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("The omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'").

If Congress sought to authorize private suits for text messages in violation of the FCC's regulations, it could have done so. Indeed, the TCPA explicitly defines "text message" and incorporates the term "text message" elsewhere in the statute. *See* 47 U.S.C. § 227(e)(8)(C), (e)(1). Where Congress uses the terms "text message" and "telephone call" separately in the same statute, the Court must presume they have different meanings; otherwise, the terms would be superfluous. *Pulsifer*, 601 U.S. at 149; *Union Pac.*, 865 F.3d at 1049–50. Accordingly, the Court should dismiss the complaint because Congress did not create a private right of action for text messages that allegedly violate the TCPA's implementing regulations.

**D. The Text Messages Plaintiff Allegedly Received Are Not Actionable Because They Do Not Encourage the Purchase of Goods or Services from AARP.**

The term "telephone solicitation" as used in FCC Subsection (c) is defined to mean "the initiation of a telephone call or message for the purpose of *encouraging the purchase or rental of, or investment in, property, goods, or services*." 47 U.S.C. § 227(a)(4) (emphasis added); 47 C.F.R. § 64.1200(f)(15). Similarly, "telemarketing" as used in FCC Subsection (d) "means the initiation of a telephone call or message for the purpose of *encouraging the purchase or rental of, or investment in, property, goods, or services*." 47 C.F.R. § 64.1200(f)(13) (emphasis added). Thus, for FCC Subsections (c) and (d) to apply, the purpose of the text messages must "be to encourage *someone* to make a purchase." *Hulce v. Zipongo, Inc.*, 723 F. Supp. 3d 669, 674 (E.D. Wis. 2024) ("Although the purpose of the communications was to encourage plaintiff to utilize Foodsmart's services, it does not follow that their purpose was to encourage him to *purchase* Foodsmart's

14

services"), *aff'd*, 132 F.4th 493 (7th Cir. 2025).

Here, the text messages Plaintiff received (shown in screen shots in the complaint) do not encourage the purchase of goods or services from AARP:

1. "AARP: The War on Diabetes, class-action lawsuit scams to avoid, favorite shopping tips and more in the January Bulletin."

2. "AARP: New year, NEW member benefits! Be the first to explore local saving to trusted tools to support your goals & empower how you live."

3. "AARP: Exclusive interview w/ Brendan Fraser! Plus, super cruiser travel tips, reduce your financial stress & more in AARP the Magazine."

4. "AARP: Dreaming of your next career step? AARP offers online educational programs, content & tools to navigate the modern job search."

5. "AARP Advocates: Yesterday's State of the Union included President Trump outlining a new retirement plan with a federal match."

6. "AARP: Step into spring savings! Explore fresh resources & discounts in AARP's Member Benefits Update."

7. "AARP: Red-Hot Scams to avoid in 2026! Save more when shopping online and declutter your home in 30 days."

Compl. at 6–8.

Text messages 1, 3, 5, and 7 are purely informational; they do not encourage the recipient to purchase, rent, or invest in any property, goods, or service. Consequently, the text messages are not actionable. *See, e.g.*, *Horton v. Tarrant Cnty. Hosp. Dist.*, No. 4:22-CV-9-P, 2022 WL 702536, at *3 (N.D. Tex. Feb. 4, 2022) (dismissing TCPA claim where the texts at issue only conveyed information about the COVID-19 vaccine); *Suriano v. French Riviera Health Spa, Inc.*, No: 18-9141, 2018 WL 6702749, at *3 (E.D. La. Dec. 20, 2018) (dismissing TCPA claims concerning informational texts about gym amenities, activities, and social media); *Reese v. Anthem, Inc.*, No. 17-07940, 2018 WL 1251658, at *5 (E.D. La. Mar. 12, 2018) (finding text messages containing public information about CPR training did not violate TCPA).

15

Text messages 2, 4, and 6 provide information about utilizing AARP's newest services and benefits *to members of the organization* who already have access to those benefits without additional purchase.  They too are not actionable because they do not encourage the purchase of any goods or services from AARP.  *See Hulce*, 723 F. Supp. 3d at 674 (dismissing TCPA where text messages encouraged use of defendant's services); *Suriano*, 2018 WL 6702749, at *3 (text concerning personal training services not actionable where plaintiff already purchased a gym membership).

Because the text messages allegedly received by Plaintiff do not encourage her to purchase goods or services from AARP, Plaintiff's claims should be dismissed.

### E. Count III Should Be Dismissed Because Plaintiff Fails to Allege Facts Showing a Willful and Knowing Violation of the TCPA.

The TCPA gives the Court discretion to award treble damages if it finds that a defendant "willfully or knowingly" violated the FCC's regulations.  47 U.S.C. § 227(c)(5).

Here, Plaintiff alleges a knowing or willful violation of FCC Subsections (c) and (d). *Koeller v. Seemplicity Security Inc.*, No. 4:24-cv-00528, 2024 WL 4751306 (E.D. Mo. Nov. 12, 2024) is instructive as to what must be alleged to state a claim for a "willful" or "knowing" TCPA violation.  There, the plaintiff brought a claim under FCC Subsection (c), alleging he received two unwanted telephone calls from the defendant.  *Id.* at *5.  He allegedly answered the first one and told the employee that he was "calling a personal number."  *Id.*  The court dismissed the plaintiff's treble damages claim because he did not allege "any facts showing that [the defendant] knew that [the plaintiff] had registered his phone number on the national [DNC] registry."  *Id.*  The plaintiff also failed to allege "any facts showing that [the defendant] purposely called a residential telephone subscriber who had registered his number on the national do-not-call registry."  *Id.*

Plaintiff's claims here are similarly deficient.  Her allegations are limited to having

16

received approximately eleven text messages from two AARP short codes, to which she had previously opted in, after texting "Stop" to a different short code.  Compl. ¶¶ 15–17; Montoya Decl. ¶ 5 & Ex. A.  Based on mere receipt of these messages, Plaintiff alleges AARP somehow knew it was sending text messages to a phone number registered on the national DNC list.  Compl. ¶¶ 81–85.  Similarly, Plaintiff speculates that AARP knowingly failed to maintain internal DNC procedures.  *See id.*  The allegations concerning AARP's knowledge are pure legal conclusions that parrot the FCC's regulations.  Thus, like in *Koeller*, the Court should dismiss Count III as the complaint is devoid of any factual allegations showing AARP knowingly violated the TCPA.  *See Koeller*, 2024 WL 4751306, at *5; *see also Woodburn v. Gen. Auto. Ins. Servs.*, No.: 2:22-cv-01975, 2023 WL 11892501, at *1 (D. Nev. Nov. 6, 2023) (dismissing request for treble damages because plaintiff "must allege more than that [defendant] intentionally placed the call").

### F.  Plaintiff Lacks Standing to Seek Injunctive Relief.

"To demonstrate standing for prospective relief, the plaintiff[ ] must show that [she] face[s] a real and immediate threat that [she] would again suffer similar injury in the future, not a conjectural or hypothetical one." *Webb ex rel. K. S. v. Smith*, 936 F.3d 808, 814–15 (8th Cir. 2019) (internal quotations omitted).  "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of L.A. v. Lyons*, 461 U.S. 95, 103 (1983); *accord Harmon v. City of Kan. City*, 197 F.3d 321, 327 (8th Cir. 1999) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .").

Here, Plaintiff alleges she received unlawful text messages from January 20, 2026 to March 20, 2026.  Compl. ¶ 17.  She does not allege she received *any* text messages during the almost two-month period between the last text message and when she filed her complaint on May 11, 2026.  Nor does she allege that she is at risk of facing a real and immediate threat of receiving another AARP text message.  Her request for injunctive relief is premised only on the past receipt of text

messages.  Accordingly, the Court should dismiss Plaintiff's request.  *See Koeller v. Cyflare Sec., Inc.*, No. 4:25-cv-410, 2025 WL 3280316, at *3 (E.D. Mo. Nov. 25, 2025) (dismissing request for injunctive relief in TCPA action because plaintiff's allegations were "limited to past instances of unlawful conduct").

## II.   PLAINTIFF'S PROPOSED CLASSES SHOULD BE STRICKEN BECAUSE THEY ARE FAIL SAFE CLASSES AND ARE OVERBROAD.

Should any of Plaintiff's TCPA claims survive dismissal, the Court should nevertheless strike Plaintiff's proposed class definitions under Rule 12(f) because (1) they are improper "fail safe" classes and (2) they are impermissibly overbroad.

### A.  The Court Should Strike Plaintiff's Improper Fail-Safe Classes.

Plaintiff's two proposed classes are impermissible "fail safe" classes.  "A fail-safe class is one that 'would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound.'"  *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020).  Courts routinely strike fail safe classes in TCPA cases.  *See, e.g.*, *Adam v. CHW Grp., Inc.*, No. 21-CV-19, 2021 WL 7285905, at *11 (N.D. Iowa Sept. 9, 2021) (striking proposed class because it "consist[ed] solely of persons who can establish that [the defendant] violated the TCPA"); *Lindsay Transmission, LLC v. Office Depot, Inc.*,  No. 4:12–CV–221, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (same); *see also, e.g.*, *Winters v. Loan Depot LLC*, No. CV-20-01290, 2022 WL 22865378, at *7 (D. Ariz. Mar. 17, 2022) (same); *Bryant v. King's Creek Plantation, LLC*, No. 4:20-cv-00061, 2020 WL 6876292, at *3–4 (E.D. Va. June 22, 2020) (same).

Here, Plaintiff seeks to represent two proposed classes.  First is the "Do Not Call Registry Class" which includes those who have received a text message from AARP, whose name is on the national DNC list, and "for whom [AARP] claims (a) it did not obtain prior express written

consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff." Compl. ¶ 49. Second is the "National Internal Do Not Call Class" which includes those who received an AARP text message "while [AARP] did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls." *Id.* Both are improper.

As to the Do Not Call Registry Class, one is only a member if there is a finding that AARP did not have an individual's prior express consent when AARP sent a text message. That is an element of liability that makes the Do Not Call Registry Class an improper fail-safe class. *See Adam*, 2021 WL 7285905, at *11 (striking proposed class of individuals for whom "Defendant failed to secure the called party's express written consent and/or after the called party requested to not receive future calls from Defendant"); *Lindsay Transmission*, 2013 WL 275568, at *4; *Winters*, 2022 WL 22865378, at *7; *Bryant*, 2020 WL 6876292, at *3.

The proposed National Internal Do Not Call Class is similarly improper. An individual is only a member once there is a finding that AARP did not maintain the procedures outlined in FCC Subsection (d), such as by failing to maintain internal DNC procedures or an internal DNC list. That is a merits-based determination that, if found in AARP's favor, would preclude an individual's membership in the National Internal Do Not Call Class. *Cf. Jacksen v. Chapman Scottsdale Autoplex, LLC*, No. CV-21-00087, 2023 WL 142533, at *4 (D. Ariz. Jan. 10, 2023) (granting summary judgment for defendant on FCC Subsection (d) claim).

**B. Plaintiff's National Internal Do Not Call Class Is Impermissibly Overbroad.**

A proposed class definition is impermissibly overbroad where the class would include members who do not have a legally viable claim. *See* 7A Wright & Miller, *Fed. Prac. & Pro.* § 1760 (4th ed.); *cf. Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987 (8th Cir. 2021) (class members must have standing for the court to have jurisdiction over their claims). Courts

19

commonly strike proposed classes on this basis. *E.g.*, *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018) (striking proposed TCPA class as overbroad where members had no claim); *Maldonado v. HSBC Mortg. Sys., Inc.*, No. 2:16–cv–00784, 2017 WL 3496460, at *4 (D. Nev. Aug. 15, 2017) (striking class allegations where plaintiff did not "meaningfully limit his proposed class to persons who have plausible claims against" the defendant).

To state a claim under FCC Subsection (d), a plaintiff must have requested not to receive telemarketing calls made by or on behalf of the business in question. *See* 47 C.F.R. § 64.1200(d)(3). *Saladino*, 2025 WL 4663390, at *2 ("Subsection (d) prohibits telemarketers from calling consumers 'who, though not on the national DNC registry, have previously requested not to receive telemarketing calls made by, or on behalf of, a particular person or entity.'"). Here, the National Internal Do Not Class is overbroad as it would include *any* person who has received an AARP text message during the relevant period. *See* Compl. ¶ 49. The class is not limited to those who requested not to receive communications. The proposed class is impermissibly overbroad.

**CONCLUSION**

For the reasons stated above, AARP respectfully asks the Court to grant its Motion and dismiss Plaintiff's lawsuit with prejudice.[7] In the alternative, Plaintiff's class allegations should be stricken.

---

[7] Dismissal with prejudice is proper here because no amount of repleading can resuscitate Plaintiff's claims. *See Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883–84 (D. Minn. 2024).

Respectfully submitted,

Dated: June 19, 2026

*/s/ Benjamin R. Merrill*

Benjamin R. Merrill, AT0009789
BROWN, WINICK, GRAVES, GROSS AND
BASKERVILLE, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309
Telephone: 515-242-2487
Facsimile: 515-323-0231
Email: ben.merrill@brownwinick.com

Adam L. Littman (*pro hac vice* forthcoming)
ArentFox Schiff LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Phone: (617) 973.6100
Fax: (617) 367.2315
Email: adam.littman@afslaw.com

John M. Hindley (*pro hac vice* forthcoming)
ArentFox Schiff LLP
1717 K Street, N.W.
Washington, D.C. 20006-5344
Ph: (202) 350.3621
Fax: (202) 857.6395
Email: john.hindley@afslaw.com

ATTORNEYS FOR DEFENDANT, AARP

## CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve all counsel of record.

*/s/ Helen Mollenbeck*

Helen Mollenbeck, Legal Assistant

21